## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
Civil Division

GISSEL GAZEK NICHOLAS    \*
5340 Falmouth Road    \*
Bethesda, Maryland 20816    \*
   \*
     Plaintiffs,    \*    Civil Action No. _____
   \*
     v.    \*    **JURY TRIAL DEMANDED**
   \*
UNITED STATES HISPANIC    \*
CHAMBER OF COMMERCE    \*
1424 K Street, N.W., Suite 401    \*
Washington, DC 20005    \*
   \*
     Serve:    \*
     Corporate Creations Network, Inc \*
     1629 K Street, N.W. #300    \*
     Washington, DC 20006    \*
     *Registered Agent*    \*
   \*
     Defendant.    \*
   \*

## COMPLAINT

**COMES** now the Plaintiff, Gissel Nicholas, by her attorneys, McCarthy Wilson, LLP, Richard W. Evans, Esquire, the Law Office of Neil S. Hyman, LLC and Neil S. Hyman, Esquire, and sues the Defendant, United States Hispanic Chamber of Commerce. In support thereof, the Plaintiff states as follows:

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

## PARTIES

1.     The Plaintiff, Gissel Nicholas (herein after sometimes referred to as "Nicholas" or "Plaintiff"), is an individual residing at 5340 Falmouth Road, Bethesda, Maryland 20816.

2.     The Defendant, United States Hispanic Chamber of Commerce (herein after sometimes referred to as "USHCC" or "Defendant"), is a foreign corporation registered to do business in the District of Columbia having its principal offices at 1424 K Street, N.W., Washington, DC 20005 and which has and continues to transact business in this District of Columbia.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this Complaint under and 28 U.S.C. § 1332.

4.     The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorneys' fees.

5.     This Court has personal jurisdiction over the Defendant because it is registered in the District of Columbia, maintains a principal office in the District of Columbia, transacts business in the District of Columbia, and has engaged in conduct in the District of Columbia out of which some or all of the claims asserted in this Complaint arise.

6.     Venue is properly had in this Court under 28 U.S.C. §1391(b) and (c) because the Defendant has and continues to transact substantial business in the District of

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Columbia and some or all of the offending conduct giving rise to this Complaint occurred in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

7.      On or about February 1, 2010, Mrs. Gissel Nicholas was extended an offer letter for employment as an SBA Federal Procurement Project Assistant with the United States Hispanic Chamber of Commerce Foundation ("USHCCF"), which she accepted.

8.      Mr. Javier Palomarez ("Palomarez") was, at that time, the President and CEO of both the USHCC and the USHCCF. The two entities shared an office space and worked closely.

9.      Nicholas transitioned from the USHCCF to the USHCC approximately one year after she was hired by USHCCF, and after almost seven (7) years of hard work and dedication to both the job and the cause of the USHCC, she rose to the position of Chief of Staff.   Nicholas accepted the position of Chief of Staff after numerous requests by Palomarez, and she did so somewhat reluctantly knowing Palomarez's history, reputation, and based on her own personal experiences and the close working relationship the CEO and President required with the Chief of Staff.

10.      Throughout her employment with the USHCC, Nicholas and other female employees were subjected to discrimination on the basis of their gender, sexual harassment, sexual assault, and a generally hostile work environment created by Palomarez and permitted to exist by the USHCC's Board of Directors, whose lack of organizational oversight and negligent board governance gave Palomarez complete power to lead the USHCC unchecked.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

3

11.     During Palomarez's leadership, he fueled an environment, best described as a "boys club" in which he was the leader and would treat the male employees and board members different from the female employees and board members, including Nicholas. This included but was not limited to group meetings/gatherings with male employees in the office in which female employees were discussed in an inappropriate, demeaning and harassing manner with topics including but not limited to an analysis of the female employees' looks and bodies. These conversations included but were not limited to discussions of Nicholas' body and physical appearance.

12.     Palomarez made private comments to the men in the office regarding the female employees' physical appearances and attire. He would often reference Nicholas' attire as an example of how the other female employees should dress and look for work, placing her in an extremely uncomfortable position, fueling unnecessary jealousy, and causing her to be singled out as a "favorite".

13.     On a number of occasions, Palomarez called Nicholas "honey" in front of employees. Not only was this extremely inappropriate, but humiliating for Nicholas as she feared other staff would think there was a romantic relationship between her and Palomarez, who had a reputation in the office as a philanderer.

14.     Palomarez's comments and inappropriate behavior would frequently lead to rumors around the office that he was having a sexual relationship with female employees, including but not limited to Nicholas, and when he would learn of such rumors, he did not attempt to end them, but would rather play into the rumor and perpetuate it as though

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

4

it were truth. Additionally, through his words and actions, he would be the driving force behind the rumors or even start them himself, including those rumors with regard to Nicholas.

15.    Palomarez has been described by Nicholas and others, both male & female, as "handsy" and flirtatious towards Nicholas and other female employees.

16.    Palomarez's conduct has included the inappropriate use of the phrase "fucking bitch" in the work place, in a negative, insulting and demeaning manner in the presence of female and male employees and directed at Nicholas and other female employees.

17.    Examples of Palomarez' discriminatory behavior included, but were not limited to purchasing first generation iPads for male employees as well as instructing new male employees to purchase tuxedos and professional attire that was paid for by the USHCC.   On numerous occasions male employees were directed to take new male employees shopping for new professional attire.   The female employees were not extended this same treatment.   Nicholas was not in favor of Palomarez purchasing clothing for staff and voiced her disapproval to him, as well as the others in the office. Despite her concerns, Palomarez continued with this practice throughout her tenure at the USHCC.   In addition, senior level male employees were granted permission by Palomarez to travel with an American Airlines AirPass and flew first class, while female employees were never offered that benefit.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

18.   During Palomarez' tenure there was a salary and bonus disparity among the male and female employees at the USHCC. Nicholas earned at least $10,000 less than her male counterparts for various years, despite having the same title (i.e. VP). Palomarez gave three annual bonuses, however, those bonuses often created hostility and resentment amongst employees as the belief was that the amounts were influenced by the degree of loyalty one exhibited towards Palomarez, as well as nature of the relationship (i.e. professional vs. friends). Palomarez was the final decision-maker on bonuses, which included additional bonuses to himself, which were not part of his employment agreement.

19.   Throughout her employment, Nicholas witnessed emotionally abusive conduct by Palomarez towards employees and members of the Board of Directors, which violated her, and other employees, fundamental human right to a safe workplace. The berating, ritual humiliation, and shaming of employees was not an uncommon practice, as was yelling and the use of foul language if an employee did not produce a certain outcome for Palomarez or if he felt challenged. Manipulative tactics were employed to remove employees or board members who Palomarez deemed disloyal or a threat, this included but was not limited to marginalizing employees for communicating with board members who Palomarez perceived as problematic,  purposefully turning employees against one another to fuel a divisive and competitive office environment thereby creating distrust amongst staff and loyalty towards Palomarez, twisting, exaggerating, and

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

fabricating information to push his personal agenda, and altering or fabricating narratives to influence opinions and the direction of major organizational decisions.

20.   Palomarez did not practice discretion in the office, but rather he appeared to relish in the fact that people confided in him, and, often shared personal and highly confidential information with employees about board members, which was perceived by staff as a power play.

21.   Unrealistic employee metrics, which he linked to his key performance indicators, and unreasonable demands on employees at all hours of the night and weekends by Palomarez, contributed to an environment with low morale and an organization with an exceedingly high turnover rate. Many employees did not last one year on the job. To mask this high rate of turnover, Palomarez pushed the false narrative that the USHCC groomed the best of the best and employees were recruited away from the organization. This false narrative was utilized on numerous occasions at Board of Directors meetings.

22.   As the years passed, Palomarez's primary focus was using his stature at the USHCC to elevate and grow his personal brand, social status and connections. As a result, he set employee performance metrics designed to further his interests and compensation, but told staff it was for their bonuses. In addition, Palomarez made unreasonable and potentially unethical requests of his team that may have violated campaign finance laws, all to further his personal agenda.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

23.     While Nicholas was a hard worker and passionate about her work and the cause of the USHCC allowing her to progress from an entry level staffer position to the Chief of Staff, she was not immune from Palomarez's words and actions; and while Palomarez's conduct and her gender did not prevent her from being successful in her work, it was nonetheless discriminatory, demeaning, and harassing in nature and has had a deep and lasting effect on Nicholas.

24.     Unfortunately for Nicholas and the other female employees subject to Palomarez's sexual harassment and hostile work environment, Palomarez's actions were not limited to one or several isolated incidents but were an ongoing and pervasive pattern of discriminatory behavior and conduct subjecting Nicholas and other employees to a hostile work environment that he created, and that was wrongfully permitted to exist by the Board of Directors, from the beginning of Nicholas' tenure  through the date of her termination on November 13, 2017.

25.     In addition to this generally sexually charged, hostile and discriminatory work environment, Nicholas and other female employees were the victims of Palomarez's unwanted sexual advances in which he tried to use his position and/or power to force himself on female employees and would engage in inappropriate, unwanted and unconsented to touching.

26.     On or about April 27, 2018, Nicholas filed a charge of harassment, discrimination and retaliation with the DC Office of Human Rights, Inquiry No. 10950.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

27.     On or about September 10, 2018, the DCOHR issued a letter of dismissal without making any determination on the merits of Plaintiff's claims.

## Count I – Violation of DC Human Rights Act –Discrimination Based on Sex and Resulting Sexual Harassment and Hostile Work Environment

28.     The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

29.     Nicholas was a female employee of the USHCC and during her tenure at the USHCC was subjected to discrimination and disparate treatment as well as unwanted advances, touching, and comments by Palomarez, the USHCC's President and CEO and Nicholas' direct supervisor.

30.     The actions of Palomarez were in violation of the DC Human Rights act and resulted in a work environment that was sexually charged and hostile towards Nicholas.

31.     The USHCC's Board of Directors was the governing body for the USHCC, which placed Palomarez in this position as the President and CEO, controlled his compensation, and which was supposed to oversee Palomarez's actions and conduct and protect the USHCC staff all of whom were underneath Palomarez in rank.

32.     The USHCC's Board of Directors knew of Palomarez's actions, conduct and the general environment he created as it related to Nicholas and all other staff as early as the spring of 2011 when a motion was passed to create an HR committee and hire pro bono HR help to investigate rumors of Palomarez's inappropriate conduct towards USHCC staff. If that was not enough, the Board knew of Palomarez's actions

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

based on the Board's personal observations, the high turn-over rate of the USHCC personnel, and the Board members interactions with Palomarez.

33.     Many Board of Director Members over the years have also resigned their position on the Board of Director's as a result of the governance and governance process of the USHCC, some citing specifically to this as their reason for resigning in the letter of resignation.

34.     This flawed governance and governance process, of which the Board was fully aware, allowed Palomarez to remain in power and allowed and contributed to Palomarez's various inappropriate, illegal, and wrongful conduct and actions as described herein.

35.     The USHCC Board of Directors provided Palomarez with his power and allowed him to continue to engage in discriminatory conduct, sexual harassment and to create a hostile work environment based on the sex discrimination and the sexual harassment.

36.     As a direct and proximate result of Palomarez's violations of the DC Human Rights Act and the USHCC and its Board of Directors permitting, allowing, accepting, adopting, ratifying and/or acquiescing to Palomarez's conduct, Nicholas was caused to suffer and continues to suffer severe and extreme physical and emotional distress, pain, and suffering, humiliation, severe anxiety and stress, depression, sleep deprivation and disorder, and episodes of social withdrawal, past present and future lost wages and loss of income, and other compensatory injuries, damages, losses, and harms.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), punitive damages in the amount of Three Million Dollars ($3,000,000.00) and other statutory damages allowable under DC Code §2-1403.16, plus pre and post judgment interest, costs, attorney's fees, and other and further relief that the Court deems just and appropriate.

## COUNT II – Retaliation

37.     The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

38.     As Palomarez's Chief of Staff and having worked at the USHCC for over seven (7) years with some operational responsibilities, Nicholas had a general understanding of Palomarez's compensation, his spending of the USHCC's funds, and other financial information of the USHCC.  During his tenure at the USHCC, Palomarez used the USHCC credit card to fund personal expenditures.

39.     According to Palomarez' employment agreement, he was to earn a gross base of $236,250 annually as well as an annual bonus that was to be approved by the compensation committee; however, in general, Palomarez did not like board members inquiring about USHCC financials or his compensation.  If a board member insisted and persisted, he waged a silent, yet highly orchestrated campaign against the individual to have the Director removed.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

40. Palomarez traveled several times a week for business and insisted on staying in luxury hotel suites, traveled first class on an American Airlines AirPass, exclusively utilized black car services, and generally only dined at high end steak houses, all of which he expensed to the USHCC.

41. There was a lack of organizational checks and balances as Mario Valdez ("Valdez"), USHCC Vice President of Finance and Administration, who served as USHCC Human Resources and CFO, reported directly to Palomarez and not the Board of Directors.

42. On numerous occasions throughout the years, Nicholas and Valdez asked to meet with Palomarez to discuss his exorbitant travel & entertainment budget.

43. On September 5th, 2017 Palomarez asked to meet with Nicholas to discuss a former employee. He asked Nicholas to report a former USHCC employee to the Federal Elections Commission ("FEC") for what Palomarez felt was campaign finance fraud. A few weeks earlier, the USHCC had retained the law firm, Venable, to investigate the matter, and it did not find evidence to suggest this person had done anything unlawful. Nicholas openly expressed concern and shock to Palomarez for wanting to do this. Palomarez went further to say that he wanted to "destroy [this former employee]" and requested that Nicholas report him regardless of Venable's recommendation.

44. Nicholas refused and loudly stated that she did not want to waste her time settling Palomarez's personal vendettas, that she had more important things to do such as

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

focusing on the National Convention, which was less than a month away. When Nicholas resisted his orders, he *told her he needed a Chief of Staff who was on "his team". A Chief of Staff who "worked with him, not against him".* Palomarez then said *"maybe I need to begin looking for a new Chief of Staff."* He told Nicholas she was *"weak"* and that he needed a *"tough Chief of Staff."* This upset Nicholas very much to the point of tears.

45.     On or about this same time, Palomarez initiated discussions regarding the renewal of his five (5) year contract. In order to do so, the compensation committee was required to review and reexamine CEO key performance indicators ("KPI"), as well as his existing employment agreement. Organizational financials were requested by members of the compensation committee.

46.     During this review period, a member of the compensation committee discovered that Palomarez was not meeting his KPIs and yet was maximizing his bonus. Unbeknownst to the Board of Directors, Palomarez had also been grossing up employee bonuses, his included, from the beginning of his tenure at the USHCC.

47.     On September 29, 2017 while in Dallas, TX, for the USHCC National Convention, Palomarez scheduled a meeting with the compensation committee and six (6) members of his staff to review and discuss the proposed KPIs of his new five (5) year contract. During this meeting, several concerns were raised by a compensation committee member, as well as a few employees, including Nicholas. The consensus and overarching sentiment by the majority was that a longer, more thoughtful discussion was

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

required, one that involved the entire Board of Directors. The fact that Palomarez was attempting to push through a five (5) year contract absent thoughtful dialogue with the full Board and without having developed a five (5) year strategic vision was concerning to Nicholas.

48.     A senior employee who participated in the meeting approached Nicholas after the meeting to inform her that he was leaving the USHCC. The following day, another senior staffer, who was also present for the KPI meeting, announced his resignation, bringing the total to five (5) employee departures in six (6) months and six (6) employee departures since February 2017.  For an organization that averaged 15 employees, losing that many employees was a clear red flag. And yet the Board of Directors elected not to ask questions because ignoring the matter was more convenient than uncovering the dark and harsh reality of their President  & CEO.

49.     USHCC General Counsel contacted Nicholas on October 6, 2017 to obtain the contact information of these two (2) employees as he had learned of alleged CEO mismanagement/mistreatment and wanted to investigate further.  Nicholas, frustrated and disillusioned with Palomarez, discussed her concerns about the high rate of turnover at the USHCC and Palomarez's management of his employees.

50.     Nicholas, who had been vocal about her concerns in the September 5, 2017 meeting with Palomarez and the September 29, 2017 meeting with Palomarez, certain USHCC staff and Board of Director Members, noticed a difference in Palomarez's behavior towards her.  Palomarez was calling on her less and began bringing Eliza

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Hernandez ("Hernandez"), the Vice President of the USHCCF, into high level USHCC discussions.

51.     During this period, Palomarez spent the vast majority of his time working to renew his employment agreement rather than performing his actual duties as President and CEO.

52.     Concurrently, Palomarez began having conversations with Hernandez to take over Nicholas' job as Chief of Staff, and informed four (4) employees that he had intentions of offering the position to Hernandez.  Nicholas learned of his intentions to replace her through staff members, not Palomarez.

53.     Nicholas had never received a poor performance review by Palomarez during her entire career at the USHCC; in fact, Palomarez often publically complimented her dedication, work ethic and professionalism.   In the summer of 2017, Palomarez had nominated her to join the Cancer Treatment Centers of America Advisory ("CTCA") Board and she became an official member in September.

54.     At the close of business on October 10, 2017, Palomarez entered Nicholas' office and asked to speak with her.  He informed Nicholas of his intentions to make Hernandez his new Chief of Staff, and asked Nicholas to assume Hernandez's position at the USHCCF.  In doing so, Palomarez noted "I need you to co-operate," a seeming not so veiled threat. Nonetheless, Nicholas thanked Palomarez for the Foundation opportunity and said she needed time to think about it, knowing she did not have a choice in the matter.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

55.    On October 12, 2017, Palomarez called an employee about Nicholas and said "she's leaking like a sieve" and attempted to turn the employee against Nicholas. After calling this employee, Palomarez called Nicholas and demanded that she confess to him and reveal who she was communicating with on the Board of Directors. Nicholas told Palomarez that she did not appreciate his intimidating tone or his interrogation tactics and ended the call.

56.    On October 20, Nicholas met with Palomarez and Hernandez to discuss her future role at the USHCC. Palomarez asked Nicholas if she had arrived at a decision and Nicholas informed him that she did not have an interest in being Vice President of the USHCC Foundation. Nicholas thanked Palomarez for considering her for the role, and asked if there were senior level opportunities at the USHCC, to which Palomarez responded "Ya know, I don't know, it never occurred to me that you would say no to the USHCC Foundation role."

57.    Over the course of the next three weeks, Palomarez intentionally excluded Nicholas from group emails and texts, meetings and conference calls. All of her Chief of Staff functions were delegated to Hernandez, essentially rendering Nicholas irrelevant. Nicholas had witnessed this type of behavior by Palomarez many times toward employees he no longer welcomed at the USHCC. This fueled weeks of a dysfunctional work environment, not only for Nicholas, but for all employees who suddenly, and without explanation, began receiving daily emails from Hernandez about the strategic direction of the USHCC. It was clear to Nicholas that Palomarez was creating a hostile

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

work environment with the hope that Nicholas would resign, as others had done so many times before.

58.     Meanwhile, on October 31, 2017, the USHCC Board of Directors Executive Committee ("EC") convened to discuss Palomarez who was being investigated for fiscal improprieties and employee abuse.  The EC voted to remove Palomarez as President & CEO of the USHCC and motioned to appoint the most senior staffer, Nicholas, as interim President and CEO.

59.     On November 1, 2017, despite not having arrived at an agreement with Nicholas on her future role at the USHCC, Palomarez contacted Valdez and Hernandez and instructed them to demote Nicholas and reduce her salary by $37,000.00, effective immediately. Reluctantly, Valdez communicated the news to Nicholas in person. Nicholas communicated to Valdez that she wanted to speak with Palomarez about the matter as she felt she deserved an explanation for his decision, one that Valdez was unable to provide. Nicholas suspected that Palomarez was retaliating for the EC's decision to appoint Nicholas, the highest ranking staff person, to serve as interim President & CEO.

60.     On November 1, 2017, Nicholas reached out to Palomarez via email regarding the decision to reduce her pay.  Palomarez did not respond to Nicholas' email. On November 3 Nicholas sent a follow up email, which also went ignored.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

17

61.     Between November 1 and 13, 2017, Nicholas' was in limbo. Palomarez ceased communicating, rendered her completely irrelevant at the USHCC, and would not respond to any of her emails.

62.     On November 13, 2017, Palomarez proceeded to wrongfully and illegally terminate Nicholas, via telephone, for having raised issues of Palomarez's wrongful, unethical, and illegal actions and for fear that she was speaking with the Board of Directors in an attempt to illuminate his illicit activities and abusive character.

63.     Immediately following the call, Nicholas called Valdez for answers. Valdez, who was on the telephone call, in which Palomarez terminated her, told Nicholas he did not know that Palomarez was going to terminate her. Valdez was caught off guard and unprepared to take such an action. During the call with Palomarez and Nicholas, Valdez recommended to Palomarez that rather than terminate Nicholas, he should give Nicholas the opportunity to resign. According to Valdez, Palomarez was angry and refused.

64.     Palomarez's improper actions, including the wrongful termination of Nicholas, were in retaliation for her openly challenging his authority, for illuminating his improper and excessive use and/or spending of USHCC funds, including wrongfully paying and/or directing the payment of himself grossly in excess of his compensation plan, and for reporting his abusive behavior and unreasonable demands on employees. Furthermore, Palomarez wrongfully terminated her in retaliation for his suspicions that she was communicating with members of the Board of Directors about his leadership of

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

the USHCC on various matters such as high employee turnover, abusive behavior towards staff, unrealistic staff goals designed to meet his metrics in order to max out his bonuses, his reckless spending and use of the organization's funds for his own benefit, and his wrongful taking of excess compensation.

65.     As stated, Nicholas never received a poor review. On the contrary, Palomarez often praised her in private meetings as well as publicly, often before the Board of Directors. After Nicholas retained counsel for her wrongful termination, Palomarez knew that Nicholas would not go away silently as other employees had. Palomarez began to wage a smear campaign against Nicholas making disparaging remarks to Board members as well as others regarding her work performance, her work ethic, her passion for the USHCC and its mission, and her character.  This smear campaign has done extensive damage to Nicholas' morale and reputation.

66.     Following his demotion and termination of Nicholas, and while still acting as President and CEO of the USHCC, Palomarez sent an email to the then Chairman of the Board with a series of lies and disparaging remarks about Nicholas including her work performance, her work ethic, her passion for the USHCC and its mission, and her character.

67.     Palomarez's various defamatory and disparaging statements have been made orally and in writing through email and in Court filings and published to various individuals including, in particular, the various members of the Board. The various statements are false, and Palomarez knew they were false when published. As a result

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

Palomarez' false, defamatory, unfounded and unsubstantiated statements, Nicholas has been subjected to public scorn, hatred, and contempt, which has caused severe harm to her previously glowing reputation among her peers, co-workers and Board members.

68.     Palomarez' statements and actions have been in retaliation toward Nicholas not only for the issues that she raised prior to her wrongful termination, but also as a direct result of her alerting the USHCC that she had retained counsel in regards to her wrongful termination and claims against the USHCC and Palomarez.

69.     As a direct and proximate result of Palomarez's retaliatory conduct in his position as President and CEO of the USHCC and the USHCC's and its Board of Directors permitting, allowing, accepting, adopting, ratifying and/or acquiescing to Palomarez's conduct, Nicholas was caused to suffer and continues to suffer severe and extreme physical and emotional distress, pain and suffering, humiliation, severe anxiety and stress, depression, sleep deprivation and disorder, and episodes of social withdrawal, past present and future lost wages and loss of income, and other compensatory injuries, damages, losses, and harms.

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), punitive damages in the amount of Three Million Dollars ($3,000,000.00) and other statutory damages allowable under DC Code §2-1403.16, plus pre and post judgment interest, costs, attorney's fees, and other and further relief that the Court deems just and appropriate.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

### Count III - Whistle Blower

70.     The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

71.     As further outlined above, Nicholas believed Palomarez was engaging in illegal, immoral and unethical behavior and she voiced and attempted to voice these beliefs to Palomarez himself and to Members of the Board of Directors.

72.     As a result of her addressing Palomarez, and more importantly addressing these issues with others in higher positions of power within the USHCC, including but not limited to members of the Board of Directors, and Palomarez's belief that she was providing information on him to the Board of Directors, Palomarez attempted to constructively terminate Nicholas and when that failed, ultimately terminated her from employment.

73.     Nicholas' termination from employment with the USHCC was the direct result of her reporting Palomarez's conduct to persons in positions of power within the USHCC and his misguided and misdirected anger towards Nicholas for being appointed interim President & CEO.

74.     As a direct and proximate result of Palomarez's retaliatory conduct in his position as President and CEO of the USHCC and the USHCC's and its Board of Directors permitting, allowing, accepting, adopting, ratifying and/or acquiescing to Palomarez's conduct in response to Nicholas' whistle blowing against him, Nicholas was caused to suffer and continues to suffer severe and extreme physical and emotional distress, pain and suffering, humiliation, severe anxiety and stress, depression, sleep

LAW OFFICES
MᴄCᴀʀᴛʜʏ Wɪʟsᴏɴ
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

21

deprivation and disorder, and episodes of social withdrawal, past present and future lost wages and loss of income, and other compensatory injuries, damages, losses, and harms.

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, for compensatory damages in the amount of One Million Dollars and Zero Cents ($1,000,000.00), punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus pre and post judgment interest, costs, attorney's fees, and other further relief that the Court deems just and appropriate.

## COUNT IV - Unpaid Wages and Benefits

75.    The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

76.    When Nicholas was wrongfully terminated on November 13, 2017, she received a letter of termination from Valdez at the direction of Palomarez and on behalf of the USHCC.

77.    The letter stated in part: "Effective today, November 13, 2017, your employment with the United States Hispanic Chamber of Commerce has been terminated. You will be paid your regular salary ($127,000 annually) through December 31, 2017, less any employee deductions for regular withholdings and medical, dental and vision benefits. In addition, your company-paid benefits will continue through December 31, 2017."

78.    This was not identified as a severance package and this was not a conditional offer, or conditioned on any action or inaction by Nicholas. This was a

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

promise to pay certain wages and benefits to Nicholas. While Nicholas was paid for her remaining paid time off, she never received any of the wages and benefits promised to her.

79.     Pursuant to DC Code § 32-1301, Nicholas' regular salary owed to her is included under the term wages.

80.     To date, she has not received the wages promised and owed to her from the time of her wrongful termination on November 13, 2017 through December 31, 2017. She also never received any of the promised benefits that were to be continued from the time of her wrongful termination through December 31, 2017.

81.     Nicholas received no notice that the November 13, 2017 promise to pay Nicholas her wages through the end of the year was being defaulted or not honored as the result of a bona fide business dispute.

82.     Pursuant to DC Code § 32-1303, the USHCC's failure to pay Nicholas the salary owed to her through from November 13, 2017 through December 31, 2017 is violation of the DC Payment and Collections of Wages laws.

83.     Pursuant to DC Code § 32-1308, a person aggrieved by a violation of this chapter of the DC Code may bring a civil action against the employer for the violation of the DC's Payment and Collection of Wages laws.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

84.     As a result of the USHCC failure to pay Nicholas the wages and benefits she was owed, Nicholas was caused to suffer a loss of those wages, income, and benefits to which she was entitled from November 13, 2017 through December 31, 2017.

85.     Pursuant to DC Code § 32-1301, *et seq.*, Nicholas is entitled to payment of the wages and benefits owed, liquidated damages equal to treble the amount of unpaid wages, attorneys' fees, costs, and other statutorily allowed damages.

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, in the amount of Seventeen Thousand Ninety-Six Dollars and Fifteen Cents ($17,096.15) in lost wages, plus treble damages for a total of Sixty-Eight Thousand Three Hundred Eighty-Four Dollars and Sixty Cents ($68,384.60) and other statutory damages allowable under DC Code § 32-1301, *et seq.*, plus the monetary equivalent of the benefits to which she was entitled from November 13, 2017 through December 31, 2017, plus pre and post judgment interest, costs, attorney's fees, and other and further relief that the Court deems just and appropriate.

## COUNT V – Negligent Retention

86.     The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

87.     While all of the above actions were the direct actions and conduct of Palomarez, the USHCC and its Board of Directors knew and had the fiduciary responsibility to protect the organization and its employees, including Nicholas, which included managing the President and CEO. The Board of Directors negligently allowed Palomarez to remain in his position of power despite being aware of the high employee turnover, the mistreatment and mismanagement of employees, and the sexual harassment of employees.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

24

88.     Further complicating the matter for employee's and particularly Nicholas was the lack of any safe and effective reporting mechanism by which to address the ongoing harassment and hostile work environment by her boss, the President and CEO of the USHCC.

89.     After Palomarez and the USHCC became aware that Nicholas had retained legal counsel with regards to her wrongful termination for various human rights violations, Palomarez retained an attorney, without the knowledge, consent or approval by the USHCC Board of Directors or USHCC's General Counsel, to represent himself and the USHCC to handle Nicholas' termination case.

90.     Palomarez by and through counsel retained by Palomarez to represent himself and the USHCC attempted to silence Nicholas after a letter had been sent to the Board of Directors advising them specifically of her claims and Palomarez's conduct.

91.     Despite the receipt of this letter and now having further knowledge of Palomarez's conduct, the Board of Directors took no action to prevent Palomarez from being able to use his position and power in the USHCC to further bully and retaliate against Nicholas.

92.     Between December 2017 and February 2018, Palomarez called Nicholas on her mobile phone, but did not leave messages. Nicholas also received a threatening anonymous email on January 30th and a threatening anonymous text on February 2, both of which are believed to have been from Palomarez or on Palomarez' behalf. Palomarez'

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

intimidation tactics and the lack of Board action left Nicholas with no option but to speak to the press.

93.    Despite the USHCC and its Board members' knowledge of Palomarez' various and numerous unethical, unlawful, and illegal actions, the USHCC and the Board of Directors negligently and wrongfully allowed Palomarez to remain in his position as the President and CEO of the USHCC, which resulted in further sexual harassment, discrimination and further creation and continuation of a hostile work environment for the USHCC's various employees, including Nicholas prior to her wrongful termination, as well as continued attempts to intimidate her.

94.    Even after Nicholas was wrongfully terminated and took additional steps to further advise the Board of Directors of Palomarez' conduct, the Board allowed Palomarez to remain in power as the USHCC's President and CEO, allowing Palomarez to bully and retaliate against Nicholas, including disparaging her before the Board, and continuing to contact her directly and send threatening messages long after her wrongful termination.

95.    After having been fully informed of Palomarez' conduct and actions, the USHCC continued to retain Palomarez and allowed him to remain in control of the USHCC as President and CEO, and the USHCC failed to terminate Palomarez or even temporarily restrict his authority. This allowed Palomarez to continue to intimidate, bully and threaten Nicholas even after her wrongful termination. Due to the USHCC and the inaction of its Board of Directors, Nicholas finally agreed to speak with the press, after

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

having declined to do so on numerous occasions, as an attempt to halt Palomarez' wrongful and illegal conduct.

96.     Nicholas had previously turned down numerous requests from the press, as she did not want her private matters publicized in the media. Nicholas believed that speaking the truth would have a negative effect on her life and potentially stigmatize her when seeking further employment. In fact, one Board member intimated that speaking to the press could affect future job prospects and harm her career, and another Board member attempted to discourage Nicholas from suing the USHCC for the same reasons. But most concerning to her was having to explain the entire ordeal to her children who would hear of it from others.

97.     After receiving no relief from the Board of Directors, Nicholas believed the only way to end the harassment, threatening, and bullying was to speak with the media and defend herself from Palomarez, his disparaging and defamatory remarks, and the Board of Directors reckless actions, which included leaking to the media a confidential & privileged letter sent by Nicholas' attorney to the media. Due to Board's inactions with regard to Palomarez' current conduct and history of conduct of which they were aware, Nicholas had no reason to believe that any relief would be forthcoming from the USHCC and every reason to believe that placing this conduct of Palomarez and the USHCC in the public light was the only way to end the misconduct and inaction.

98.     As a direct and proximate result of USHCC's and its Board of Directors' negligent retention of Palomarez and its inaction, Nicholas was caused to suffer and

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

continues to suffer severe and extreme physical and emotional distress, pain and suffering, humiliation, severe anxiety and stress, depression, sleep deprivation and disorder, and episodes of social withdrawal, past present and future lost wages and loss of income, and other compensatory injuries, damages, losses, and harms.

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus pre and post judgment interest, costs, attorney's fees, and other and further relief that the Court deems just and appropriate.

## COUNT VI – Negligent Supervision

99.     The Plaintiff restates, re-alleges and incorporates herein all facts and allegations described above.

100.    The USHCC and its Board of Directors owed a duty to the USHCC employees and staff, including Nicholas, to properly train, monitor, instruct and supervise Palomarez as the President and CEO of the USHCC.

101.    During Palomarez' time with the USHCC as its President and CEO, the USHCC and its Board of Directors breached these duties by negligently failing to properly train, monitor, instruct and supervise Palomarez, allowing the harmful actions described herein and causing severe and permanent harm to the Plaintiff.

102.    Despite the Board of Directors' knowledge of Palomarez' wrongful, unethical and illegal conduct, and the resultant harm as described herein, which was also evidenced by the high-turnover rate of the USHCC staff, the Board negligently failed to

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

28

take action to properly train, monitor, instruct and supervise Palomarez to prevent harm to USHCC employees, including specifically the Plaintiff.

103.   As a direct and proximate result of the Board of Directors failure to train, monitor, instruct, and supervise Palomarez, Nicholas was caused to suffer and continues to suffer severe and extreme physical and emotional distress, pain and suffering, humiliation, severe anxiety and stress, depression, sleep deprivation and disorder, and episodes of social withdrawal, past present and future lost wages and loss of income, and other compensatory injuries, damages, losses, and harms.

WHEREFORE, the Plaintiff prays for judgment against United States Hispanic Chamber of Commerce, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus pre and post judgment interest, costs, attorney's fees, and other and further relief that the Court deems just and appropriate.

Respectfully submitted,

McCARTHY WILSON LLP

By:   */s/ Richard W. Evans*
Richard W. Evans, Esquire #448436
2200 Research Boulevard
Suite 500
Rockville, Maryland 20850
(301) 762-7770
evansr@mcwilson.com

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

LAW OFFICE OF NEIL S. HYMAN, LLC

By:   */s/ Neil S. Hyman*
      Neil S. Hyman, Esquire #465047
      4520 East West Highway
      Suite 700
      Bethesda, Maryland 20814
      (301) 841-7105
      neil@hynmanlaw.com
      *Attorneys for Plaintiff*

## **JURY DEMAND**

The Plaintiff respectfully requests a jury trial on all counts of this Complaint.


Respectfully submitted,

McCARTHY WILSON LLP
By:   */s/ Richard W. Evans*
      Richard W. Evans, Esquire #448436
      2200 Research Boulevard
      Suite 500
      Rockville, Maryland 20850
      (301) 762-7770
      evansr@mcwilson.com

LAW OFFICE OF NEIL S. HYMAN, LLC

By:   */s/ Neil S. Hyman*
      Neil S. Hyman, Esquire #465047
      4520 East West Highway
      Suite 700
      Bethesda, Maryland 20814
      (301) 841-7105
      neil@hynmanlaw.com
      *Attorneys for Plaintiff*

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770